IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| STEVE RIDDICK, ) | CASE NO. 7:20cv00560 |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| C/O K. MOORE, ) | By:   Hon. Thomas T. Cullen |
| *et al.*, ) | United States District Judge |
| Defendants. ) | |

Steve Riddick, a Virginia inmate proceeding *pro se*, filed this civil rights complaint under 42 U.S.C. § 1983, alleging that a corrections officer at Red Onion State Prison used excessive force against him and then retaliated against him by charging him with a disciplinary infraction, and that other officials denied him due process during the disciplinary proceedings.[1] The matter is presently before the court on a motion to dismiss by three defendants and summary judgment motions by Riddick and Defendant K. Moore. After a careful review of the record, the court concludes that the defendants' motions must be granted, and that Riddick's motion must be denied.

---

[1] This case is but one of *many* cases Riddick has brought against Red Onion personnel in this court. *See Riddick v. Franklin, et al.*, 7:20cv00081 (W.D. Va. Feb. 3, 2020); *Riddick v. Mullins, et al.*, 7:20cv00096 (W.D. Va. Feb. 10, 2020); *Riddick v. Trent, et al.*, 7:20cv00447 (Aug. 4, 2020); *Riddick v. Lambert, et al.*, 7:20cv00448 (W.D. Va. Aug. 4, 2020); *Riddick v. Mathena, et al.*, 7:20cv00449 (W.D. Va. Aug. 4, 2020); *Riddick v. Mickles, et al.*, 7:20cv00559 (W.D. Va. Sept. 17, 2020); *Riddick v. Kiser, et al.*, 7:20cv00561 (Sept. 17, 2020); *Riddick v. Kegley, et al.*, 7:20cv00562 (W.D. Va. Sept. 17, 2020); *Riddick v. Kiser, et al.*, 7:20cv00580 (W.D. Va. Sept. 28, 2020); *Riddick v. Bunch, et al.*, 7:20cv00597 (W.D. Va. Oct. 6, 2020); *Riddick v. Gilbert, et al.*, 7:20cv00598 (W.D. Va. Oct. 6, 2020); *Riddick v. Collins, et al.*, 7:20cv00742 (W.D. Va. Dec. 11, 2020); *Riddick v. McCowan, et al.*, 7:21cv00138 (W.D. Va. Mar. 5, 2021); *Riddick v. Stanley, et al.*, 7:21cv00177 (W.D. Va. Mar. 26, 2021); *Riddick v. Kiser, et al.*, 7:21cv00178 (W.D. Va. Mar. 26, 2021); *Riddick v. Phillips, et al.*, 7:22cv00290 (W.D. Va. June 6, 2022); *Riddick v. Mullens, et al.*, 7:22cv00291 (W.D. Va. June 6, 2022); *Riddick v. Barton, et al.*, 7:22cv00297 (W.D. Va. June 9, 2022); *Riddick v. Clarke, et al.*, 7:22cv00304 (W.D. Va. June 13, 2022); *Riddick v. White, et al.*, 7:22cv00437 (W.D. Va. Aug. 1, 2022); *Riddick v. Mullens, et al.*, 7:23cv00011 (W.D. Va. Jan. 4, 2023); *Riddick v. King, et al.*, 7:23cv00012 (W.D. Va. Jan. 4, 2023); *Riddick v. Rose, et al.*, 7:23cv00072 (W.D. Va. Jan. 31, 2023).

## I.  BACKGROUND

At the time his claims arose, Riddick was incarcerated at Red Onion State Prison ("Red Onion"), a maximum security prison operated by the Virginia Department of Corrections ("VDOC"), where he is currently confined. Riddick alleges that, on September 21, 2019, Defendant Correctional Officer K. Moore "refused [Riddick's] psychiatric physical." (Compl. 1 [ECF No. 1].)[2] Later that day, a nurse came to conduct the physical. When Moore arrived to escort Riddick from his cell to see the nurse, Moore "threatened [Riddick], called [him] a bitch [and] put leg irons on [him] to[o] tight." (*Id.*) During the psychiatric physical, Moore "yelled in [Riddick's] ear [and] called [him] a bitch verbally harassing [him]." (*Id.*) After Moore escorted Riddick back to his cell, while he was kneeled down, she "pushed forcefully on [his] shoulder, called [him] a nigger and told [him] to make a move." (*Id.* at 1, 5.) Riddick filed a complaint form asking to have surveillance video of the incident preserved.

At lunch on September 22, 2019,[3] Moore served Riddick a "badly damaged tray that had corners broken off [and] was split open." (*Id.* at 2.) Riddick tried to show Moore that the tray was damaged, but she "wouldn't look at it [and] when [he] told her it was damaged, she said so." (*Id.*) Later that day, Moore filed a disciplinary charge against Riddick for intentionally destroying or damaging state property. Riddick believes that she did so to retaliate against him for events the previous day and for a complaint he had filed against her the previous month that claimed she had refused to switch out a damaged tray.

---

[2] For the sake of consistency, all page cites to the record in this opinion refer to the page numbers assigned to the documents by the court's electronic filing system.

[3] In describing these events, the complaint switches from 2019 to 2020 and back to 2019. From other filings, however, it is clear that the alleged incident occurred in 2019.

On September 30, 2019, Hearing Officer Larry Mullens (referred to as Mullins in defendants' pleadings) conducted a disciplinary hearing on the disciplinary charge. Riddick told Mullens about Moore's use of force on September 21, 2019, and that the next day, she gave him a tray that was split open and had broken corners. Riddick also presented a statement from the inmate in the cell beside his who reported hearing Riddick tell Moore that the tray was damaged. In addition, Riddick presented his emergency grievance from September 22, 2019, about the damaged tray and prior grievances showing he had complained for months about receiving damaged trays. He also gave Mullens "2 notarized affidavits" of dates [he] received over 30 damaged trays in June and August 2019." (*Id.* at 7.) Moore testified that when Riddick complained about getting a damaged tray, she had switched it out for an undamaged one. She asserted that on September 22, 2019, she had inspected the tray before opening Riddick's tray slot. Riddick denied that any inspection occurred. He also argued that it was unlikely he could have damaged the tray while it was loaded with food and while Moore was still beside his cell.

Mullens found Riddick guilty of the offense and imposed a $15 fine. Riddick asked Mullens "to view the video to see [Riddick] put the tray to [his] cell window [and] Moore's reaction." (*Id.* at 6–7.) Mullens did not do so. On appeal, Warden Jeffrey Kiser and Regional Administrator Carl Manis upheld the guilty finding.

Liberally construed, Riddick's complaint alleges the following § 1983 claims: (1) on September 21, 2019, Moore used excessive force against Riddick when escorting him to and from his physical; (2) on September 22, 2019, Moore filed a "fabricated" disciplinary charge against Riddick "in retaliation over an incident [he] had with her a day before" and a prior

grievance he had filed about her (*id.* at 3, 8); (3) Mullens violated Riddick's due process rights by not viewing video and ignoring evidence; (4) Mullens was deliberately indifferent to the evidence favorable to Riddick, in violation of his Eighth Amendment rights; (5) Kiser and Manis upheld the guilty finding, in violation of due process and out of deliberate indifference, in violation of the Eighth Amendment. As relief, Riddick seeks monetary damages.

Defendants Mullens, Kiser, and Manis have filed a motion to dismiss. Defendant Moore has filed an answer and a motion for summary judgment. Riddick has filed responses to the defendants' motions, one of which he also styles as a summary judgment motion. The motions have been fully briefed, and this matter is ripe for disposition.

## II. MOTION TO DISMISS (FED. R. CIV. P. 12(B)(6))

### A. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007).[4] "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

**B. Due Process**

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To state a procedural due process violation, a plaintiff must (1)

---

[4] The court has omitted internal quotation marks, alterations, footnotes, and/or citations here and throughout this Memorandum Opinion, unless otherwise noted.

identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). In other words, a plaintiff must identify a sufficient liberty or property interest at stake before the court examines whether the procedures attendant to deprivation of that interest were constitutionally sufficient. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). A prison inmate typically can demonstrate a protected interest by showing an "atypical and significant hardship . . . in relation to ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

While neither the Supreme Court nor the Fourth Circuit has specified the threshold at which the Due Process Clause is implicated when it comes to monetary fines, several Judges in this district have routinely held that small fines assessed at disciplinary hearings do not trigger due process protections. *See, e.g., Roscoe v. Mullins*, No. 7:18cv132, 2019 WL 4280057, at *3 (W.D. Va. Sept. 10, 2019) (granting summary judgment in defendants' favor as to the due process claim where the only penalty was a $15 fine), *aff'd on other grounds*, No. 19-7343 (4th Cir. Oct. 28, 2020); *Ferguson v. Messer*, No. 7:15cv140, 2017 WL 1200915, at *8 (W.D. Va. Mar. 30, 2017) (concluding that three $12 fines did not give rise to a protected property interest); *Bratcher v. Mathena*, No. 7:15cv500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding $12 fine did not impose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life and so did not constitute a property interest). *But see Bowling v. Clarke*, No. 7:19cv453, 2020 WL 4340944, at *5 (W.D. Va. July 28, 2020) (denying summary judgment and noting that, "[a]rguably, however, the imposition of that fine, which was

deducted from [the plaintiff's] inmate account after an allegedly defective disciplinary hearing, constituted the deprivation of a protected property interest without due process").

Here, Riddick was convicted at a disciplinary hearing of having damaged state property and was fined $15. Consistent with the persuasive authority cited above, the court concludes that Riddick's $15 fine in this case was not an "atypical and significant hardship" that triggered due process protections. *See Sandin*, 515 U.S. at 484. Because Riddick has failed to allege a protected liberty or property interest that was affected by the actions of Mullens, Kiser, or Manis during his disciplinary hearing or subsequent appeal, the alleged insufficiency of the process afforded to him did not violate any constitutionally protected right. *Kentucky Dep't of Corr.*, 490 U.S. at 460. For this reason, the court will grant the defendants' motion to dismiss.

## C. Deliberate Indifference

Riddick also asserts that Mullens, Kiser, and Manis were "deliberately indifferent" to evidence of his innocence that Riddick presented (or could have presented) at the disciplinary hearing. Riddick apparently believes these defendants' actions or omissions violated his Eighth Amendment rights. He is wrong.

To prove a violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment regarding prison conditions, an inmate plaintiff must show that: (1) objectively, he suffered a "sufficiently serious" deprivation; and (2) subjectively, the defendant prison official had "a sufficiently culpable state of mind," namely, "deliberate indifference" to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To meet the objective prong, the plaintiff must show that "a prison official's act or omission . . . result[ed] in the denial of the minimal civilized measure of life's necessities." *Id.* To show deliberate indifference, the

plaintiff must show that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837.

Under this legal standard, Riddick's allegations against Mullens, Kiser, and Manis simply do not amount to plausible Eight Amendment violations. Being fined $15 did not deprive Riddick of any necessity of life. And by finding Riddick guilty of the offense and imposing or refusing to invalidate that fine on appeal, the defendants did not act with deliberate indifference to any "excessive risk to inmate health or safety." *Id.* The court will grant the defendants' motion to dismiss as to Riddick's Eighth Amendment claims regarding his disciplinary proceedings and fine.

### III. MOTION FOR SUMMARY JUDGMENT (FED. R. CIV. P. 56)

**A. Standard of Review**

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed. The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials.

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). To survive a summary judgment motion, nonmovants must present sufficient evidence that could carry the burden of proof of their

claims or defenses at trial. *Id.* The nonmovants "must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in their favor. *Anderson*, 477 U.S. at 248.

"Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). The court's inquiry is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014). A *pro se* litigant's verified complaint must be considered as an affidavit and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "[U]nsupported speculation is not sufficient to defeat a summary judgment motion." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992).

Moore argues that she is entitled to summary judgment on both of Riddick's claims against her. She contends that his retaliation claim must be dismissed because he failed to exhaust administrative remedies on that issue before filing this lawsuit. (*See generally* Aff. of C. Meade, Jan. 18, 2022 [ECF No. 39-1].) As to Riddick's excessive force claim, Meade concedes that he exhausted his administrative remedies, but she contends that the force she used that day was not excessive. (*See generally* Aff. of K. Moore, Feb. 3, 2022 [ECF No. 52]; Aff. of C. King, Jan. 19, 2022 [ECF No. 39-2]; Aff. of R. Craft, R.N. [ECF No. 50].)

**B. Moore's Summary Judgment Evidence on Use of Force**

On September 21, 2019, Moore and Officer Shirks escorted a nurse to Riddick's cell to conduct the weekly physical required for inmates who are taking prescription mental health medications. These physicals usually occur on the weekend in the pod area. As Moore and Shirks approached Riddick's cell, something occurred that caused them to leave the area momentarily. Moore does not recall what this intervening event was. For security reasons, the nurse could not remain in the pod unescorted by security officers, so she also left the area. A short time later, Shirks and Moore returned to Riddick's cell to escort him to his physical. He was "cursing and kicking the cell door." (Moore Aff. ¶ 4.) Moore raised her voice to ask him to be quiet and to ask why he was "fussing." (*Id.*) Moore denies Riddick's allegations that she was cursing at him, calling him names, telling him to "make a move," or yelling in his ear. (*Id.*)

Before officers may bring an inmate out of his cell, he must "kneel facing the back of the cell to allow officers to apply restraints including leg irons and handcuffs." (King Aff. ¶ 4.) Once the restraints have been applied, the two officers "assist the inmate to his feet." (*Id.*) Each officer must keep both hands on the inmate's upper body during the escort. When they return him to his cell, he must kneel to have these restraints removed. "Because the inmate's hands are handcuffed behind his back, each officer places a hand under the [inmate's] arm with the other hand on the upper part of his arm or shoulder to assist [him] with kneeling. This assistance keeps the [inmate] from losing balance and falling forward." (*Id.*) During the entire restraint removal process, "the inmate is required to look straight ahead and not turn his head toward the officers. This prevents [him] from spitting . . . or making other aggressive motions with his head that may harm staff." (*Id.*)

On September 21, 2019, Riddick knelt as required and Moore and Shirks placed him in restraints and escorted him from his cell to the place where the nurse was waiting. When Riddick saw the nurse, he "cursed at her and called her names." (Moore Aff. ¶ 4.) Despite Riddick's belligerence, the nurse took his vital signs. Moore denies that she and Shirks improperly applied Riddick's leg irons to cause him harm. During the psychiatric evaluation, the nurse checked and approved the application of the leg irons.

After the nurse completed her procedures, Moore and Shirks escorted Riddick back to his cell. Moore ordered him to kneel, but he "protested and was cursing." (*Id.* at ¶ 5.) He "refused to kneel and kept turning his head." (*Id.*) Moore states "At no time did I use unnecessary force on Riddick, nor did I forcefully push on his shoulder." (*Id.*) Once the officers removed the leg irons, the control booth officer closed the cell door, and the officers removed Riddick's handcuffs through the tray slot.

Medical records kept during the ordinary course of business indicate that Nurse Charles conducted Riddick's psychiatric physical on September 21, 2019, and that Nurse Craft was also present, although this nurse has no personal recollection of these events. (*See* Craft Aff. ¶ 4.) The nursing notes indicate that Nurse Charles checked Riddick's restraints and "was able to put two fingers into the leg restraints" (*Id.* Ex. A.) The notes also report that Riddick was disruptive during the physical. The medical records further reflect that "Riddick has not complained of any shoulder injury or the alleged use of excessive force by Officer Moore on September 21, 2019." (*Id.* ¶ 5.)

**C. Factors for Evaluating an Excessive Force Claim**

It is well established that only "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). But not every malevolent touch by a prison guard amounts to a deprivation of constitutional rights. *Id.* at 9. In analyzing such a claim, the court has a two-fold inquiry: first, subjectively, whether the officer applied force "in a good[-]faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm"; and second, whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* at 6, 8. More specifically on the objective prong, the court inquires whether the plaintiff showed more than "*de minimis* uses of physical force" by the defendant. *Id.* at 10. Thus, the "core judicial inquiry [is] . . . the nature of the force—specifically, whether it was nontrivial and was applied maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010).

Importantly, the absence of serious injury is relevant to the Eighth Amendment inquiry. *Id.* at 37. The amount and nature of the injury an inmate suffered is a factor that "may suggest whether the use of force could plausibly have been thought necessary in a particular situation" or that "may also provide some indication of the amount of force applied." *Id.* "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37–38. "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38.

**D. Riddick's Excessive Force Claim**

Riddick claims that Moore used excessive force against him on September 21, 2019, by applying leg irons too tightly and by pushing "forcefully on [his] shoulder" while he was kneeling. (Compl. 1 [ECF No. 1].) In addition, he claims that Moore "threatened [him], called [him] a bitch," yelled in his ear, and verbally harassed him. (*Id.*) Moore denies these allegations.

Riddick has also claimed that surveillance camera footage of the interactions with Moore would have bolstered his excessive force claim against Moore, but prison officials did not retain this footage. Riddick filed a motion seeking sanctions against the defendants for spoliation of evidence. (ECF No. 36.) The magistrate judge conducted an evidentiary hearing on the issue and found that investigative officials at the prison should have preserved video footage, but that no defendant in this case had intentionally destroyed it (ECF No. 110).[5] She ruled that no defendant could rely on the contents of the video footage on summary judgment

---

[5] The court takes judicial notice of the procedure at Red Onion for preserving particular portions of surveillance camera video footage as outlined by undisputed testimony at the evidentiary hearing. (ECF No. 80.) Certain higher ranking security officials and administrators can review recorded footage on the security camera system of a particular time period or incident, but officers in the institutional intelligence department (the investigator or the intelligence officers under his command) are designated, upon notification of an incident or requests from officials or inmates, to download specific clips of the footage from the camera system and label and preserve those clips in the intelligence department, related to an investigation and/or litigation. In this case, while evidence shows that some officials viewed the footage of the September 21, 2019 encounter between Moore and Riddick and believed that footage would be downloaded and saved, this preservation process was not carried out. After two to three months, as part of its normal operations, the camera system automatically recorded over the September 2019 footage, making the footage of the incident unavailable for this litigation.

The magistrate judge specifically found from the evidence that Moore, as a corrections officer, had no involvement in the failure to preserve the footage from September 21, 2019, and that no other defendant intentionally failed to have the footage downloaded. The magistrate judge also found that while defendant Kiser, as the Red Onion Warden in September 2019, had access to review the footage of the September 21, 2019 incident on the camera system, he testified to having no recollection of viewing that footage and no involvement in the failure to preserve it. The court thus affirms the sanctions that the magistrate judge imposed (*see* ECF No. 110) and does not find grounds for any more severe sanction related to the loss of the video footage. (*See* Fed. R. Civ. P. 37(e)(2) (providing that only upon finding that a "party acted with the intent to deprive another party of the information's use in the litigation" may the court impose severe sanctions such as granting a default judgment before trial or instructing the jury to presume "that the lost information was unfavorable to the party").

or at trial, and that the court could consider her findings that the footage should have been, but was not, preserved.

After review of the record, including the transcript of the magistrate judge's hearing and her Memorandum Order, the court concludes that Riddick's excessive force claim fails because he does not allege or offer evidence that he suffered any injury from Moore's actions. The court cannot find that loss of the video footage has any bearing on this key aspect of Riddick's excessive force claim. He has asserted only that the lost video would have shown Moore's uses of force, not the effects of that force. In his verified response, he states thar Moore placed the leg irons "to[o] tight cutting into [his] skin." (ECF No. 26.) But Riddick does not refute the defendant's evidence that a nurse checked and approved the tightness of the leg irons that day. Moreover, even if the leg irons were not as comfortable as desired, Riddick only endured them for a short time—while walking between his cell into the pod area, during a brief encounter with the nurse, and back to his cell. Riddick does not offer any evidence to contradict Nurse Craft's affidavit stating that his medical records reflect no complaint from him about injuries related to the incident on September 21, 2019.

Neither the use of leg irons nor a push or shove that causes no discernable injury constitutes a means of force "of a sort repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 37–38. For the lack of injury in the record, the court can only conclude that the force Moore used in escorting Riddick on that day was *de minimis* and thus insufficient to support a claim of excessive force in violation of the Eighth Amendment. *Id.* at 38.

Riddick also alleges that Moore yelled at him and said hateful things to him during their encounters. Mere verbal abuse by a correctional officer does not rise to the level of an Eighth

Amendment violation. *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C.), *aff'd*, 917 F.2d 1302 (4th Cir. 1990) ("The subjection of a prisoner to verbal abuse or profanity does not arise to the level of a constitutional deprivation."). Nor did Moore's alleged words, however hateful and unprofessional, transform the force she used into malicious or sadistic inflictions of unnecessary harm on Riddick when no more than *de minimis* physical harm occurred. The court concludes that Riddick has not presented a genuine issue of material factual dispute on which he could persuade a jury that Moore's uses of force were "objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8. Therefore, the court will grant Moore's motion for summary judgment as to the excessive force claim.

**E. Retaliatory Disciplinary Charge**

Riddick alleges that on September 22, 2019, Moore served him a broken lunch tray and then brought a disciplinary charge against him for intentionally damaging that tray. He asserts that she did so in retaliation for events on September 21, 2019, and for prior grievances he had filed against her. Moore argues that this claim should be dismissed because Riddick failed to exhaust administrative remedies on the retaliation issue. The court agrees; this claim is barred.

*1. Requirement to Exhaust Administrative Remedies*

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v.*

*Bock*, 549 U.S. 199, 211 (2007). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim from court review. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

The defendants bear the burden of proving the affirmative defense that Riddick failed to exhaust available administrative remedies regarding his claims before filing suit. *Jones*, 549 U.S. at 216. If the defendants prove that Riddick did not exhaust, he may avoid the exhaustion requirement under § 1997e(a) by showing that the remedies under the established grievance procedures were not "available" to him. *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

*2. VDOC Administrative Remedies*

VDOC Operating Procedure ("OP") § 866.1, the Offender Grievance Procedure, is the mechanism used to resolve inmate complaints. (*See generally* Meade Aff.) The VDOC grievance procedure requires that, before submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to resolve his complaint informally. Except in limited circumstances, he may do so by submitting an informal complaint form to the grievance department. The procedure requires officials to provide a written response to an

informal complaint within 15 days. If the inmate is dissatisfied with the response, his next step is a regular grievance.

A regular grievance must be submitted to the grievance department within 30 calendar days from the date of occurrence. In so doing, the inmate should attach the informal complaint form to his regular grievance form. If the regular grievance does not meet the filing requirements, a grievance official will complete the intake section on the back of the form, mark the reason for the rejection (such as failing to utilize the informal procedure or filing outside the required time limit), and return the form to the inmate with instructions on how to correct and resubmit the regular grievance, if feasible. Once a regular grievance is accepted for review, officials investigate the inmate's contentions, and the warden or his designee will issue a Level I written response. If the inmate is dissatisfied with that response, he may appeal for Level II review by mailing the regular grievance, the response, and the informal complaint and response to the regional administrator or other specified official. Some regular grievances may be appealed for Level III review. A VDOC inmate meets the exhaustion requirement only when he has filed a regular grievance and has "appealed through the highest eligible level without satisfactory resolution of the issue." (*Id.* at ¶ 7.)

### 3. *Riddick's Exhaustion Efforts*

According to Moore's evidence, Red Onion grievance records reflect that Riddick has not submitted any regular grievance raising his current contention that Moore served him a damaged lunch tray on September 22, 2019, so that she could then charge him for damaging it. According to Red Onion records, the only type of remedy that Riddick pursued on this issue was emergency grievance 178243 that he filed on September 22, 2019, about being served

a broken tray. Officials rejected it, finding that the issue did not meet the definition of an emergency. It is undisputed that exhaustion of remedies in the VDOC grievance procedure requires filing an informal complaint, followed by a regular grievance and all available appeals. Riddick concedes in his summary judgment response that he did not file an informal complaint form on his claim that Moore served him a tray that was already damaged and then charged him for damaging it. (Pl.'s Resp. pg. 17–18 [ECF No. 51].) Furthermore, the defendants' evidence shows that Riddick never submitted a regular grievance complaining that anyone served him a damaged lunch tray on September 22, 2019.

Records reflect that Riddick filed a regular grievance on September 12, 2019, stating that on August 28, 2019, he received a dinner tray with a long crack in it in two places. On September 23, 2019, Assistant Warden Fuller issued a Level I grievance response finding the grievance unfounded. But Riddick's grievance filings about this prior incident, however, do not satisfy the mandate in 42 U.S.C. § 1997e(a) that an inmate must exhaust administrative remedies about a specific retaliation assertion before he raises a retaliation issue in a federal lawsuit.[6] In this case, it is undisputed that Riddick failed to pursue the required steps of the VDOC grievance procedure concerning his claim that Moore *retaliated* against him on September 22, 2019, by serving him a damaged lunch tray and then bringing a disciplinary charge against him for that damage.[7] Riddick also does not argue or provide evidence that the grievance procedures were unavailable to him in the weeks after this incident.

---

[6] Given the number of federal lawsuits that Riddick has pursued, as noted above, the court has no doubt that he is well-aware of this well-established exhaustion requirement.

[7] Riddick asserts that he raised his retaliation allegations during the disciplinary proceedings—by complaining during his disciplinary appeals that Moore set him up by serving him a damaged tray. The court finds no evidence that disciplinary proceedings substitute in any way for the VDOC grievance procedures when an issue

On this evidence, the court concludes that Moore is entitled to summary judgment as a matter of law on the ground that Riddick failed to exhaust administrative remedies on his retaliation claim against her. Moreover, review of the record reflects no option for Riddick to complete the exhaustion process on his retaliation claim at this time. Therefore, the court will dismiss his retaliation claims against Moore with prejudice.

## IV.   CONCLUSION

For the reasons stated, the court concludes that the defendants' motion to dismiss (ECF No. 21) must be granted as to all claims against defendants Mullens, Kiser, and Manis. The court also concludes that defendant Moore's motion for summary judgment (ECF No. 38) must be granted, and that Riddick's motion for summary judgment (ECF No. 26), which merely reiterates and rephrases the allegations of the complaint, must be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 30th day of March, 2023.

>  */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE

---

(like retaliation) is grievable. Indeed, the disciplinary proceeding record clearly shows that the sole purpose in disciplinary proceedings is to determine whether or not the inmate committed the offense charged, which in this case was damaging state property.